**STATE of Utah, Plaintiff and Respondent,**

v.

**Robert B. SHELDON, Defendant and Appellant.**

No. 13827.

Supreme Court of Utah.

Jan. 19, 1976.

Robert B. Sheldon, appellant pro se.

Vernon B. Romney, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., R. Paul Van Dam, Salt Lake County Atty., Clint Balmforth, Salt Lake Deputy County Atty., Salt Lake City, for respondent.

ELLETT, Justice:

This appeal is from a conviction in the district court of a violation of a Salt Lake County ordinance reading as follows:

9–9–1. It shall be unlawful for any person, corporation, partnership, or legal entity owning or occupying real property in the county to fail to control the growth of injurious and noxious weeds on such property or to fail to remove from the property any such weeds, or refuse, unslightly or deleterious objects or structures after having been given notice from the director of the board of health.

Mr. Sheldon owns approximately one and one-third acres of land in a residential district of Salt Lake County. He was charged in the Murray City Court with "keeping unsightly or and (sic) deleterious objects on property in violation of Title 9, Chapter 9, Section 1 of the Revised Ordinances of Salt Lake County," and the charge specified that he "did keep junk cars and other deleterious objects on the property . . . after having been notified in writing by the Board of Health."

A jury trial was demanded by Mr. Sheldon, and upon being convicted by a jury he appealed to the district court, where he had a trial de novo and was again convicted by a jury.

Since Murray City Court is ex officio a justice court having jurisdiction throughout the county, appeals to the district court are, by Article VIII, Section 9 of the Utah

Constitution, made final except as to cases involving the validity or constitutionality of a statute.

In view of the constitutional provision, Mr. Sheldon did not bring a transcript of his trial before us. We, therefore, consider only the question of the constitutionality of the ordinance.[1]

In the *Eureka City* case (footnote 1) this court in speaking of the exception to the finality of district court judgments on appeal from a justice court said:

> . . . The effect of this exception is to allow an appeal to this court in every case which originates in a justice's court, and in which the validity or constitutionality of a statute is drawn in question, made an issue, and decided by the district court on appeal. In all other cases brought before justices of the peace, and transferred to the district courts by appeal, the final judgment of those courts is conclusive. But does the exception include a case so brought and transferred, where the validity or constitutionality of a city ordinance was litigated, and decided by the district court? We are of the opinion that it does; for, while an ordinance is an enactment of a municipal government, and its application is local, still, when valid, it has the force and effect, in favor of the municipality and against persons bound thereby, of a legislative enactment, and acts done in contravention thereof become unlawful, the same as when done in contravention of a statute. An ordinance, which can only be passed in pursuance of some legislative enactment, may, like a statute, affect property rights and individual liberty; and the framers of the constitution evidently intended, by the use of the word "statutes" to include "ordinance," and that the appellate court should have the power to determine the validity of

any law, whether of local or general application, and whether enacted directly by the lawmaking power, or by a municipality through a delegation of power by the legislature. While the lawmaking power of the state is vested in the legislature, yet it is competent for the legislature to delegate power to municipal corporations to pass ordinances which shall have the same force, within the municipality, as a statute, to control its municipal affairs. Hence reasons which exist for the review of statutes by appeal exist for the review of ordinances. . . .

In the case of *Salt Lake City v. Perkins*,[2] the question was raised, to-wit: Can an appeal be made to this court from the ruling of the district court on a constitutional question which was not raised in the district court when the appeal is from the justice of the peace courts? This court again said:

> Furthermore, it is essential to the jurisdiction of this court over judgments of the district courts, in cases which originate in and are appealed from justices of the peace, that it shall appear that a question of the validity or constitutionality of a statute was presented to the district court. No such question was thus presented.

For other cases to the same effect see *Ogden City v. Crossman,* 17 Utah 66, 70, 53 P. 985; *Overland Gold Mining Company v. McMaster,* 19 Utah 177, 187, 56 P. 977.

In the absence of a transcript of the record, we cannot say that the constitutional question was raised in the district court, and since it does not appear from the record before us that it was, we do not consider it on this appeal.

Other questions are raised, but we deem them to be without merit. They do not appear to have been called to the attention of the district court, and so we affirm the

1. *Eureka City v. Wilson,* 15 Utah 53, 48 P. 41, affirmed 173 U.S. 32, 19 S.Ct. 317, 43 L.Ed. 603.

2. 9 Utah 2d 317, 343 P.2d 1106 (1959).

judgment of the district court.[3] No costs are awarded.

TUCKETT, J., concurs.

HENRIOD, Chief Justice (concurring).

I concur. Speaking to the dissent, however, a word of explanation perhaps is apropos with respect to a quotation therein from *In re State in Interest of Woodward*[1] attributed to me. This was in a footnote, intended to be a reference to an unusual exception to the general rule that matters not pressed below cannot be canvassed for the first time on appeal. That footnote was not intended to apply to a case like the instant one where there is no showing that the matter was raised and no opportunity had for raising it. Otherwise the possibility of invited error, if it could be raised on appeal for the first time, would become a general rule.

The observation of Mr. Justice Crockett in his concurrence thus becomes meaningful, as does that of Mr. Justice Ellett in footnote No. 3 of the main opinion. The footnote was meant to apply to a rare case adverted to in *State v. Cobo*,[2] as reflected in the text at page 101, 90 Utah 89, syllabus 6, 60 P.2d 952, to which reference is made. To lay down the broad generalization of the dissent would not be consonant with an application of reasonable rules of procedure but, contrariwise, would sanction a sort of reverse due process area where knowledgeable waiver of a jury trial, waiver of counsel, a plea of guilty, failure to take exceptions, and the like would not be reasons to sustain a judgment, but a reason to reverse it.

CROCKETT, Justice (concurring, with added observations).

I concur in the main opinion. But I add two further observations:

First: The rules of procedure which require a party to state his objections or defenses timely, or be deemed to have waived them, have a salutary and essential purpose in the interest of the orderly administration of justice. It seems to me so obvious as to require nothing more than the statement of the proposition to demonstrate the unfairness and impracticability of allowing a party to withhold, or to fail to disclose, such an objection until after going through the time, trouble and expense of the procedures preliminary to and through a trial, with the reservation in mind that he may win, but that in any event he has nothing to lose. But if he does lose, he will then assert a further defense by challenging the statute upon which the action is predicated, and have the whole thing held for naught.

Second: If it be assumed that we should review the matter, in my opinion the statute is not unconstitutional. See *State v. Packard*, 122 Utah 369, 250 P.2d 561; *Connally v. General Construction Co.*, 269 U.S. 385; and see discussion in the closely analogous case of *Buhler v. Stone* (Utah 1975), 533 P.2d 392, and authorities therein cited.

MAUGHAN, Justice (dissenting).

For the following reasons I dissent.

Article 8, Section 9, Utah State Constitution, provides that the decisions of the district court on appeals to it from justices of the peace shall be final, except in cases involving the validity or constitutionality of a statute. Ordinances fall within this provision as well. The Constitution attaches no condition to the right to take an appeal, from the judgment of a district court, of a matter originating in a justice's court, which involves the validity or constitutionality of an ordinance. The Constitution does not say that the constitutional issue must first be raised in the court below. It

3. The dissent misses the point of this opinion. This court lacks jurisdiction to consider any case tried in the district court on appeal from a justice court unless the constitutionality of a statute or ordinance was raised in the district court. If no such issue was raised, then the ruling of the district court is final and we are without any jurisdiction to consider any phase of the case.

1. 14 Utah 2d 336, 384 P.2d 110 (1963).

2. 90 Utah 89, 60 P.2d 952 (1936).

simply, and forthrightly provides jurisdiction for this court to consider the validity or constitutionality of an ordinance, when it appears that such is involved.

That such can be done for the first time on appeal would appear clear from the oath of office given by members of this court upon accession to the bench. We swear to support, obey, and defend the Constitution of the United States, and the constitution of this state. We do not swear to support, obey, and defend the Constitution, only if the constitutional issue is raised in the court below. That this should be the law is apparent from the oath we give, and from the fact that if an ordinance offends the Constitution, or is invalid for other reasons it is no law; and no conviction can stand under it. In my view the framers of our Constitution understood that and stated it very plainly in the section referred to above.

Indeed, the jurisdiction of a court to mete out punishment under a statute depends upon the validity of that statute. If the statute is not valid, because of constitutional imperfection, a court has no jurisdiction to pronounce punishment under it. Furthermore, a party cannot confer jurisdiction on a court to act in a manner which is constitutionally impermissible. Yet, what is said in the main opinion is that, given an unconstitutional statute, a party can confer jurisdiction on a court to act under it, by not raising the issue prior to appeal. In such a way do we subvert the Constitution we have sworn to uphold.

The right to raise a constitutional issue for the first time on appeal is not new. In the matter of *In Re Clark's Estate*,[1] the constitutional question was neither suggested, briefed, or argued in the case prior to its submission for decision. Given these facts, the court said:

If an act of the Legislature is repugnant to the Constitution, the courts have the power, and it is their duty, so to declare. [Citations omitted.] We have

held that while a constitutional question should be raised at the earliest opportunity, it may be raised for the first time in this court, unless waived, if that be possible. [Citations omitted.]

The court goes on to quote from *Marbury v. Madison,* 1 Cranch 137, 179, 2 L.Ed. 60 (1803), wherein Chief Justice Marshall said:

From these, and many other selections which might be made, it is apparent, that the framers of the constitution contemplated that instrument, as a rule for the government of courts, as well as of the legislature. Why otherwise does it direct the judges to take an oath to support it? This oath certainly applies, in an especial manner, to their conduct in their official character. How immoral to impose it on them, if they were to be used as the instruments, and the knowing instruments, for violating what they swear to support! . . . Why does a judge swear to discharge his duties agreeably to the constitution of the United States, if that constitution forms no rule for his government? If it is closed upon him, and cannot be inspected by him. If such be the real state of things, this is worse than solemn mockery. To prescribe, or to take this oath, becomes equally a crime. [It will be remembered that in that case the court raised the constitutional issue sua sponte.]

The Montana court went on to say that if it declined to decide the constitutional question it would be avoiding the performance of a duty; and if the act in question were in fact unconstitutional and the court declined to so declare, such an act would be a violation of the oath of office.

In *Schwartz v. People,*[2] another case passing on the constitutionality of a statute, raised for the first time on appeal, said:

The validity of the local option law seems not to have been directly chal-

1. 105 Mont. 401, 74 P.2d 401, 406, 114 A.L.R. 496 (1937).

2. 46 Colo. 239, 104 P. 92 (1909).

lenged or passed upon in the court below, as being obnoxious to any provision of our state Constitution. . . . If the law upon which the prosecution is based is unconstitutional, then it is no law and there can be no offense for the supposed violation of its terms. Whenever that question is presented and urged, although it be for the first time in a court of review, if it clearly appears, upon the face of the undisputed record, to be fairly involved, manifestly it commands and deserves the consideration and judgment of the court. Especially is this so in a criminal case where the very foundation of the cause rests upon the validity of the statute, and in which alone is found the power and authority of the court to act at all, else there might appear the anomaly of a person being found guilty of an offense under, and paying the penalty for violation of, despite a protest on this ground, the provision of a pretended law which in fact had and has no valid existence and is not a law. The facts are agreed, the statute law upon which the case is founded is before the court, and if it appears upon its face, when read and considered in connection with the organic law of the state, to contravene the latter, it is too clear to require argument that at least no judgment of conviction based on such law should be affirmed, leaving that question undetermined, although not directly urged in or decided by the trial court.

As can be seen, the rule requiring defenses based on constitutional grounds be first asserted in the lower court is not always strictly applied. Particularly is this so where the constitutional question arises "in cases involving the deprivation of life or liberty." [3]

This court has heretofore addressed itself to a situation, similar to the one here on appeal, where the constitutional issue was first raised on appeal. In the matter of *In Re Woodward*,[4] Mr. Chief Justice Henriod in giving the opinion of the court said:

> There may be some doubt as to whether we should review the two points on appeal having to do with the sections mentioned, supra, since they were raised on appeal for the first time. If what we say in this opinion would jeopardize the liberty of appellant . . . there would be authority for raising a constitutional issue for the first time on appeal.

What this court says in the main opinion certainly jeopardizes the liberty of appellant. He was sentenced to imprisonment in the county jail.

The main and concurring opinions confuse trial tactics not objected to, at the trial level, with the constitutionality of the whole proceeding.

The attempt to try a matter anew, for the first time on appeal, by advancing a different theory, or by attacking an instruction not objected to at the trial, is by no stretch of the imagination concomitant with a constitutional issue. The former may not affect the legality of the proceeding; the latter certainly does. The constitution is not subject to the proceedings, the trial tactics, if you will. The proceedings are subject to the constitution.

As in *Schwartz* (ibid), the ordinance before us appears on its face to raise two issues within the concept of due process.[5] Is it void for vagueness, because it provides no proper standards for determination of its violation? Does it run counter

---

3. 5 Am.Jur.2d, Appeal and Error, Section 574.

4. 14 Utah 2d 336, 384 P.2d 110 (1963).

5. Article 1, Section 7, Constitution of Utah; Amendment 14; Sec. 1, Constitution of the United States.

to *Christiansen v. Harris*,[6] wherein we said:

> That no party can be affected by such action, until his legal rights have been the subject of an inquiry by a person or body authorized by law to determine such rights, of which inquiry the party has due notice, and at which he had an opportunity to be heard and to give evidence as to his rights or defenses.

Here the ordinance consigns a person to the status of a law-breaker after he refuses to remove weeds and other vaguely described objects, after having been given notice from the Director of the Board of Health—no hearing is provided.

With such vague standards governing the exercise of the discretion of the Director of the Board of Health, the subject ordinance would appear to permit and encourage an arbitrary enforcement of the law.[7]

We should entertain the issue and all cases in conflict herewith should be overruled.

---

6. 109 Utah 1, 7, 163 P.2d 314 (1945).

7. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 170, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).