# EUREKA CITY, Respondent, *v.* R. G. WILSON, Appellant.

CONSTITUTIONAL LAW—APPEAL FROM JUSTICE—ORDINANCES—VALIDITY—USE OF HIGHWAY—MOVING BUILDING—CITY COUNCIL.

1. The supreme court, in cases originally brought before a justice of the peace, has jurisdiction, under section 9, article 8, of the constitution, providing that the decision of the district court in such cases shall be final "except in cases involving the validity or constitutionality of a statute," to determine the validity or constitutionality of city ordinances as well as of statutes. Under this exception an appeal lies to this court in every case which originates in a justice's court, and in which the validity or constitutionality of a statute is drawn in question, and decided, or which ought to have been decided, by the district court on appeal.

2. An ordinance has the force and effect, in favor of the municipality, and against persons bound thereby, of a legislative enactment.

3. It is competent for the legislature, in this state, to delegate power to a municipal corporation to pass ordinances, which shall have the same force, within the municipality, as a statute, to control its municipal affairs.

4. In construing section 9, article 8, of the constitution, the following principles with respect to appeals to the supreme court from cases which originally were brought before a justice of the peace are held to govern: (a) It is essential to the jurisdiction of the supreme court over judgments of the district courts, in cases which originated in and were appealed from justices of the peace, that it shall appear that a statutory question was raised and presented to the district court. (b) That such question was decided by the district court, or that its decision was

necessary to the judgment rendered in the case. (c) That, if these things appear, then the supreme court has jurisdiction, and must examine the judgment, so far as to enable it to determine whether the statutory question and claim of right were correctly adjudged; and, if they were, the judgment must be affirmed. (d) If the statutory question was erroneously decided, then this court must further inquire whether, notwithstanding the error in deciding that question, there was any other matter or issue, not affected by the statutory question, decided, which in itself is sufficient to sustain the judgment; and, if such be the case, then the judgment must be affirmed, without determining whether the adjudication on such other matter or issue be correct. (e) That if it be found that the statutory question is of such force as to render a correct decision thereof necessary to a final adjudication, or that there has been no decision of any other matter or issue, not affected by the statutory question, sufficient to sustain the judgment of the district court, then this court will reverse the judgment and direct a proper judgment to be entered, or remand the cause, as may be required by the circumstances of each particular case.

5. Where the law leaves the exercise of a power to the discretion of an officer, it does not mean that he shall exercise such discretion wantonly or arbitrarily, to the injury of any subject. It is reasonable discretion, which must be exercised in a reasonable manner.

6. The principal design of a highway is to accommodate public travel in the usual and ordinary mode, and this is so at common law; but it may lawfully be used for other purposes, where the occasion and circumstances permit of such use, without an unreasonable interference with the free passage over it of those who are traveling upon it in the usual manner.

7. A city council in this state, having power, under subdivisions 10, 11, 22, § 1755, Comp. Laws Utah 1888, to regulate the use of the streets and prevent obstructions being placed on them, may, by ordinance, prohibit the moving of buildings thereon without the written permission of

the mayor or other officer, or a committee of its members; and such power is not legislative, but simply administrative.

8. Where a municipal corporation may prohibit a thing altogether, it may prohibit it conditionally, and confer upon some officer or officers power to determine whether a fact or state of things exists which will authorize the doing of it.

9. Where the city council of a city is authorized by statute to regulate the use of streets and prevent obstructions being placed thereon, it may, by ordinance, prohibit the moving of buildings into and upon any of its highways without permission, and may designate an officer or committee to grant permission, upon application therefor, on proper occasions. Such an ordinance comes within the police power of the state, and does not deprive the citizen of his "property without due process of law," or deny to him "the equal protection of the laws," in violation of section 1, article 14, of the amendments to the constitution of the United States.

(No. 776.   Decided Feb. 11, 1897.)

Appeal from the Fifth district court, Juab county. Hon. E. V. Higgins, *Judge.*

R. G. Wilson was convicted originally in a justice's court for moving a building onto the street in violation of an ordinance of Eureka City, and appeals.  *Affirmed.*

*J. W. N. Whitecotton,* for appellant.

That such an ordinance is invalid and unconstitutional, see: *Frazee's Case,* (Mich.) 6 Am. St. Rep. 310; *In re Garrabad,* (Wis.) 36 Id. 948; *City of Chicago* v. *Trotter,* 136 Ill. 430; *Anderson* v. *City of Wellington,* (Kan.) 10 Am. St. Rep. 175; *McCrowell* v. *Bristol,* (Virginia) 20 L. R. A. 653; *Thompson* v. *Schermerhorn,* 6 N. Y. 92; *Birdsall* v. *Clark,*

73 N. Y. 73; *Macon* v. *Patty,* (Miss.) 34 Am. Rep. 451; *Davis* v. *Read,* 65 N. Y. 566; *Bryan* v. *Chicago,* 60 Ill. 507; *Baltimore* v. *Radecke,* (Md.) 33 Am. Rep. 239; *City of St. Louis* v. *Russell,* (Mo.) 20 L. R. A. 721; *Day* v. *Green,* 4 Cush. 433; *East St. Louis* v. *Wehrung,* 50 Ill. 2c; *Kinmundy* v. *Mahan,* 72 Ill. 462; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *State* v. *Kantler,* (Minn.) 21 N. W. 856; *People* v. *Haug,* (Mich.) 37 Id. 21; *Minneapolis Gas Light Co.* v. *City of Minneapolis,* (Minn.) 30 N. W. 450; *Zabel* v. *Louisville Baptist Orphans' Home,* 13 L. R. A. 668; *Hydes & Goose* v. *Joyes,* (Ky.) 96 Am. Dec. 311.

*B. N. C. Scott* and *Williams, Van Cott & Sutherland,* for respondent.

BARTCH, J.:

The defendant in this case was originally prosecuted before a justice of the peace, under a municipal ordinance of Eureka City, for the offense of obstructing the free passage of Main street, in said city, by moving into and upon the street a frame building without having obtained permission as provided by the ordinance. Upon conviction he appealed to the district court, and after conviction there, and sentence to pay a fine, to this court.

The first question which we will consider is whether we have jurisdiction on appeal in a case like this, where the first appeal was from the judgment of a justice of the peace, and where the validity of a city ordinance, and not of a statute, is assailed. Counsel for the respondent insist that the decision of the district court in such a case is final, and not subject to review here. In support of this contention they cite section 9 of article 8 of the constitution, which section, so far as material here, provides as follows: "Appeals shall also lie from the final judgment of justices of the peace in civil and criminal

cases to the district courts on both questions of law and fact, with such limitations and restrictions as shall be provided by law; and the decision of the district court on such appeals shall be final, except in cases involving the validity or constitutionality of a statute." This provision grants an appeal from the final judgments of justices of the peace to the district courts, and declares that the decision of those courts on such appeals shall be final, except in cases where the validity or constitutionality of a statute is involved. The effect of this exception is to allow an appeal to this court in every case which originates in a justice's court, and in which the validity or constitutionality of a statute is drawn in question, made an issue, and decided by the district court on appeal. In all other cases brought before justices of the peace, and transferred to the district courts by appeal, the final judgment of those courts is conclusive. But does the exception include a case so brought and transferred, where the validity or constitutionality of a city ordinance was litigated, and decided by the district court? We are of the opinion that it does; for, while an ordinance is an enactment of a municipal government, and its application is local, still, when valid, it has the force and effect, in favor of the municipality and against persons bound thereby, of a legislative enactment, and acts done in contravention thereof become unlawful, the same as when done in contravention of a statute. An ordinance, which can only be passed in pursuance of some legislative enactment, may, like a statute, affect property rights and individual liberty; and the framers of the constitution evidently intended, by the use of the word "statutes" to include "ordinance," and that the appellate court should have power to determine the validity of any law, whether of local or general application, and whether enacted di-

rectly by the lawmaking power, or by a municipality through a delegation of power by the legislature. While the lawmaking power of the state is vested in the legislature, yet it is competent for the legislature to delegate power to municipal corporations to pass ordinances which shall have the same force, within the municipality, as a statute, to control its municipal affairs. Hence reasons which exist for the review of statutes by appeal exist for the review of ordinances. 1 Dill. Mun. Corp. § 308; 18 Am. & Eng. Enc. Law, 747; *City of Detroit* v. *Ft. Wayne & B. I. Ry. Co.*, 95 Mich. 456; *Roderick* v. *Whitson*, 51 Hun 620; *Ex parte Christensen*, 85 Cal. 208.

Having concluded that we have jurisdiction to review the question of the validity or constitutionality of an ordinance in a case like the one at bar, it becomes important to inquire whether it is the duty of this court, in this class of cases, to determine questions presented in the record other than those relating to such validity or constitutionality of an ordinance or statute. Counsel for the appellant insists that this court, on appeal, in this class of cases, is not limited to questions of the validity of a statute, but has power to review all the questions presented. We do not agree with counsel as to this proposition, because such does not appear to be the meaning and intention manifested from the provision of the constitution already quoted, especially when they are viewed in the light of the history of the former practice in the late territory of Utah. Under the territorial form of government, appeals were allowed from all final decisions of the district courts to the supreme court, and questions of both law and fact were reviewed; and whether a case was originally brought before a justice of the peace, or in the district court, was immaterial. 1 Comp. Laws Utah, p. 57. This practice made it possible to appeal any case,

no matter how insignificant the amount of the judgment, or how totally without merit the appeal or the cause of the appellant. It had a tendency to encourage profitless litigation, and consume the time of the appellate court without just cause. Such practice was in vogue when the constitution was framed, and we must assume that the framers of that instrument were familiar with current history, and that they had knowledge of the practice and its effect. When, therefore, contrary to the former practice, the framers of the constitution provided that "the decision of the district courts" on appeals from judgments of justices of the peace "shall be final, except in cases involving the validity or constitutionality of a statute," their evident object and intention were to obviate the evil to which the practice then existing was subject, and yet provide a way by which statutory and constitutional questions which might arise in such cases could be reviewed by the appellate court. This object could be but very imperfectly attained, if, when this court assumed jurisdiction of such a case, it would not only determine the statutory or constitutional question, but also inquire into and determine every other question raised during the progress of the trial. In effect, this would restore the former practice, against the express provision of the constitution, because it would render it possible to bring every such case here for re-examination. All that would be necessary would be to raise same statutory or constitutional question, whether material to the decision of the case or not, and the right of appeal and re-examination of the case would be assured. Clearly, no such result was intended, nor is it manifest from the language employed in the provision above quoted, nor can it be made possible by judicial interpretation, without violating familiar rules of construction. In harmony

with the plain meaning and intent of the constitution, we hold: (1) That it is essential to the jurisdiction of this court over judgments of the district courts, in cases which originated in and were appealed from justices of the peace, that it shall appear that a statutory question was raised and presented to the district court. (2) That such question was decided by the district court, or that its decision was necessary to the judgment rendered in the case. (3) That, if these things appear, then this court has jurisdiction, and must examine the judgment so far as to enable it to determine whether the statutory question and claim of right were correctly adjudged; and, if they were, the judgment must be affirmed. (4) That, if the statutory question was erroneously decided, then this court must further inquire whether, notwithstanding the error in deciding that question, there was any other matter or issue, not affected by the statutory question, decided, which in itself is sufficient to sustain the judgment; and, if such be the case, then the judgment must be affirmed, without determining whether the adjudication on such other matter or issue be correct. (5) That if it be found that the statutory question is of such force as to render a correct decision thereof necessary to a final adjudication, or that there has been no decision of any other matter or issue, not affected by the statutory question, sufficient to sustain the judgment of the district court, then this court will reverse the judgment and direct a proper judgment to be entered, or remand the cause, as may be required by the circumstances of each particular case. The application of these principles to the class of cases here under consideration is clearly authorized by the language and spirit of the constitutional provision mentioned. *Murdock* v. *City of Memphis,* 20 Wall. 590.

The remaining question necessary to be considered in this case is the one relating to the validity of section 12 of Ordinance No. 10 of Eureka City, under which the appellant was convicted. That section reads as follows: "No person shall move any building, or frame of any building, into or upon any of the public streets, lots or squares, of the city, or cause the same to be upon, or otherwise to obstruct the free passage of the streets, without the written permission of the mayor, or president of the city council, or in their absence a councilor. A violation of this section shall on conviction subject the offender to a fine of not to exceed twenty-five dollars." The appellant contends that this is unconstitutional and void, and claims that it is unreasonable and deprives the citizens of a lawful use of a public highway; that it vests in the mayor, or, in his absence, the president or member of the council, an absolute and arbitrary discretion, and delegates to an individual the power which was conferred upon the council; and that it contravenes section 1, art. 14, of the amendments to the constitution of the United States, in that it deprives the citizen of his property without due process of law, and denies to him the equal protection of the law. We do not concur in this contention. The ordinance in question was passed in pursuance of section 1755, Comp. Laws Utah 1888, which, among other things, confers power upon the city council "to regulate the use of streets, alleys, avenues," etc. (subdivision 10); "to prevent and remove obstructions and encroachments upon the same" (subdivision 11); "to prevent injury or obstruction to any street, avenue, alley," etc. (subdivision 22). The city council is thus clothed with power not only to regulate the use of streets, but also to prevent the placing of obstructions upon them. Upon examination of section 12 of the ordinances, it

cannot successfully be maintained that its provisions are unreasonable, or that it deprives any citizen of the lawful use of the street, or that it authorizes an improper or unlawful exercise of power, or an unjust discrimination, but, on the contrary, its provisions are a substantial compliance with the statute. It is true, there is a discretion vested in an officer, but such discretion does not mean an absolute or arbitrary power. It is a legal discretion, which must be exercised in a reasonable manner. Where the law leaves the exercise of a power to the discretion of an officer, it does not mean that he shall exercise such discretion wantonly or arbitrarily, to the injury of any subject. Such officer is responsible for an abuse of the power. The authority or power is not his. He is simply the agent of the law for a lawful purpose, and must exercise his discretion fairly, reasonably, and honestly, and is answerable as such for a prostitution of the power so vested in him. *State* v. *Yopp*, 2 Am. St. Rep. 305; *White* v. *Kent*, 11 Ohio St. 550. In the case at bar the creation of the discretion implies that there may be times and occasions when the moving of a building upon the street might be permitted with safety to property, and without any unreasonable interference with the ordinary mode of travel. This, however, is not an ordinary or a usual use of the street, and the appellant could not claim the privilege so to use it as matter of right. The principal design of a highway is to accommodate public travel in the usual and ordinary mode and this is so at common law; but it may lawfully be used for other purposes, where the occasion and circumstances permit of such use, without an unreasonable interference with the free passage over it of those who are traveling upon it in the usual manner. Just when an unusual or extraordinary use of the highway ought to be permitted is doubtless, in many in-

stances, difficult to determine. Especially is this so in cities and towns where the population is dense and the amount of travel great. It would seem impossible to lay down any general rule as to when such use should be allowed, because no such rule could be established which would meet the emergencies of individual cases. Very much must depend upon the locality; the width of the street; the injury, if any, it will be likely to cause to other property; the time when such use of the highway is to be made; and the obstruction it will offer to ordinary travel. No human foresight could, with any degree of accuracy, determine and schedule the occasions and circumstances which would entitle a citizen to use a highway in an extraordinary manner, by moving a building into and upon the same. Such being the case, a city council, which has power by statute to regulate the use of the streets and prevent obstructions being placed on them, may by ordinance prohibit the moving of buildings thereon without the written permission of the mayor or other officer or committee of its members; and such power is not legislative, but simply administrative, and renders the prohibition conditional instead of absolute, the use of the highway for such unusual purpose being subject to a contingency, to be declared upon by the agent of the law. It was doubtless within the power of the city council of Eureka City to entirely prohibit the moving of buildings upon its streets, and, where a municipal corporation may prohibit a thing altogether, it may prohibit it conditionally, and confer upon some officer or officers power to determine whether a fact or state of things exists which will authorize the doing of it. In many cases it is difficult to determine whether there has been an unwarranted delegation of discretionary power to an officer, but a delegation of power, similar in

character, to that conferred in the section of the ordinance under consideration, has frequently been upheld by the courts, and the views here expressed have the support of authority. Elliott, Roads & S. 578, note 2; *In re Flaherty,* 105 Cal. 558; *Day* v. *Green,* 4 Cush. 433; *Williams* v. *Railway Co.,* 130 Ind. 71; *Com.* v. *Parks,* 155 Mass. 531; *Ex parte Fiske,* 72 Cal. 125; *Graves* v. *Shattuck,* 69 Am. Dec. 5⌣6; *Com.* v. *Davis,* 162 Mass. 510; *Pedrick* v. *Bailey,* 12 Gray 161; *Quincy* v. *Kennard,* 151 Mass. 563; *People* v. *Mulholland,* 82 N. Y. 324; *Moers* v. *City of Reading,* 21 Pa. St. 188; *Locke's Appeal,* 72 Pa. St. 491; *Dowling* v. *Insurance Co.,* (Wis.) 65 N. W. 738; *Com.* v. *Ellis,* 158 Mass. 555; *Blanding* v. *Burr,* 13 Cal. 343; *City of Lowell* v. *Simpson,* 10 Allen 88.

Nor does section 12 of the ordinance deprive the citizen of his "property without due process of law," or deny to him "the equal protection of the laws," in violation of the fourteenth amendment of the constitution of the United States. The provisions of the amendment above referred to undoubtedly mean that there shall be no arbitrary spoliation of property, or arbitrary deprivation of individual rights, but that every person shall be afforded equal security and protection with every other person, under like circumstances, in the enjoyment of his rights of person and property; that all shall have like access to the courts for the protection and enforcement of their personal and civil rights and the redress and prevention of wrongs; and that legislation shall treat alike all-persons subject to it, and not interpose an impediment to the business or pursuits of one, except as applied to the same business or pursuits by all others under like circumstances. Those provisions of the amendment, however, were not designed to interfere with the police power of the state; and while the extent of this power

does not appear to have yet been defined with precision, and while, practically, it would seem impossible to so define it, because of the great variety of conditions and circumstances which govern its application, still there can exist no doubt that under such power the state may prescribe regulations to promote the peace, health, education, morals, and good order of the people; and, this being true, it may, of necessity, by legislation, regulate, through its agents, with as little inconvenience to the individual as possible, the use of the highways, because such regulation is conducive to the good order of the general public. Especially is this the case as to populous cities and towns. Laws of this character, enacted under the police power of the state, are not intended to impose an unnecessary or unequal restriction upon any person, or to unjustly discriminate between citizens, but to promote the general good with the least possible inconvenience to the individual. Examining the provisions of the section of the ordinance under consideration, we do not perceive that they contravene any of the principles stated, nor do they authorize any unjust discrimination between citizens in the use of the highway. They apply to all alike, under like circumstances, and are necessary to the good order of Eureka City, the peace, welfare, and comfort of its inhabitants; simply forbidding an unusual and extraordinary use of the highway by any citizen without first having obtained permission for such use from an officer. There is no attempt to interfere with the usual and ordinary use of the highway, but it is made unlawful for any person to so use his own property as to materially injure the personal rights and property of others. This is in entire harmony with the maxim, "*Sic utere tuo ut non alienum lædas.*" That a person has the right to move a building into and upon the streets of a

15 UTAH—5

city, thronged, as they frequently are, with people, without any restraint or control, is a proposition both unsound and unreasonable. No such right exists at common law. Nor is the denial thereof a violation of any statutory or constitutional law. *Barbier* v. *Connolly*, 113 U. S. 27; *Crowley* v. *Christensen*, 137 U. S. 86; *Railroad Co.* v. *Richmond*, 96 U. S. 521; *Manufacturing Co.* v. *Beckwith*, 129 U. S. 26.

The case of *Yick Wo* v. *Hopkins*, 118 U. S. 356, cited by counsel for the appellant, was one of race discrimination, and is not in point here. The cases relied on by the appellant for a reversal, on the ground that the ordinance in question is invalid, cannot be regarded as controlling authority in the case at bar. They are principally cases where, by ordinance, it was attempted to interfere with absolute rights of person and property, and with the doing of a thing which might lawfully be done. As we have seen, such is not the case at bar. We do not deem it important to discuss any other question presented in the record. The appellant moved his house into and upon Main street, one of the principal streets of Eureka City, without permission as provided by ordinance, and thereby committed an unlawful act, which rendered him liable to the punishment inflicted. The judgment is affirmed.

ZANE, C. J., and MINER, J., concur.